IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| WILLIAM N. CASTILLO,<br><br>    Plaintiff,<br><br>    v.<br><br>ROBERT TALMAGE; OFFICER MCMILLIAM; OFFICER BROWN; NURSE FAES; OFFICER HESTER; D/W MARTY ALLEN; CAPT. MOBLEY; and SGT. FUGITT,[1]<br><br>    Defendants. | CIVIL ACTION NO.: 6:17-cv-55 |

**ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, currently incarcerated at Georgia State Prison ("GSP") in Reidsville, Georgia, filed a cause of action pursuant to 42 U.S.C. § 1983 contesting certain conditions of his confinement. (Doc. 1.) After the Court conducted its frivolity review, (doc. 13), Defendants Allen, Talmage, Hester, Mobley and Fugitt filed a Motion to Dismiss, (doc. 18), to which Plaintiff filed a Response, (doc. 24).[2]

For the reasons which follow, I **RECOMMEND** that the Court **GRANT** Defendants' Motion to Dismiss, (doc. 18), and **DISMISS** Plaintiff's Complaint **WITHOUT PREJUDICE** due to Plaintiff's failure to exhaust his available administrative remedies. Further, the Court

---

[1] The Court **DIRECTS** the Clerk of Court to change Defendant Officer Tolmage to Robert Talmage on the docket and record of this case.

[2] Defendants filed their Motion to Dismiss only as to Defendants Allen, Talmage, Hester, Mobley and Fugitt. (Doc 18.) Defendants' Motion was not filed on behalf of Defendants Faes, Brown, and McMilliam because they had yet to be served at the time of filing. Indeed, as the Court pointed out in a prior Order, these Defendants have still not been served. (Doc. 26.) However, the exhaustion issues raised in Defendants' Motion to Dismiss apply with equal force to the unserved Defendants. Thus, the Court will address whether Plaintiff's Complaint should be dismissed as to all Defendants.

should **DIRECT** the Clerk of Court to close this case and **DENY** Plaintiff *in forma pauperis* status on appeal.

## BACKGROUND[3]

Plaintiff filed this action on April 24, 2017, regarding events that allegedly occurred in December 2016 through January of 2017. (Doc. 1.) In his Amended Complaint, Plaintiff asserts that on December 26, 2016, he notified Defendant Talmage of his "mental health problem" and a "cut on his right arm." (Doc. 12, p. 2.) Defendant Talmage allegedly ignored Plaintiff. Later that day, Plaintiff requested and was denied medical treatment from Defendants McMilliam and Brown. (Id.)

On December 27, 2016, Plaintiff repeated his requests for medical treatment to Defendants Faes, Hester, Allen, Mobley, and Fugitt for the "still bleeding" cut. (Id. at p. 3.) Defendants again refused to take him to medical. By mid-afternoon, Plaintiff alleges that while his wound had closed, there was still dried blood. (Id.) From then until January 4, 2017, Plaintiff alleges that he requested and was denied medical treatment from now-terminated Defendants Hutcheson, Harvey, Howard, and Rock. Plaintiff also states that his wound became infected and required that he "reopen his cut . . . to squeeze the puss [sic] out." (Id. at p. 5.)

On January 4, 2017, Officer O'Berry and Defendant Talmage took Plaintiff to medical for an examination. (Id. at p. 6.) During the examination, medical staff observed that Plaintiff's injury was still a little red, but not infected, and that Plaintiff would be fine. (Id.) Plaintiff claims that Defendants were deliberately indifferent to his medical needs, retaliated against him, and violated his equal protection rights by not treating him, a "Spanish inmate," as quickly as other African American inmates. (Id. at p. 8.)

---

[3] The Court takes the following facts from Plaintiff's Complaint, accepts them as true, and construes them in Plaintiff's favor, as it must at this stage.

I conducted the requisite frivolity review of Plaintiff's Amended Complaint and found that Plaintiff's allegations arguably state colorable claims for relief against Defendants Talmage, McMilliam, Brown, Faes, Hester, Allen, Mobley, and Fugitt for deliberate indifference to medical needs. (Doc. 13.) Thus, I directed the United States Marshal to serve those Defendants with a copy of Plaintiff's Amended Complaint. (Id.) However, I recommended that the Court dismiss Plaintiff's claims for monetary damages against Defendants in their official capacities, dismiss Plaintiff's deliberate indifference claims against Defendants Hutcheson, Harvey, Howard, Rock, and Moe, and dismiss Plaintiff's retaliation and equal protection claims. (Id.) Plaintiff did not file any objections to the Report and Recommendation, and the Court subsequently adopted it as the opinion of the Court. (Doc. 25.)

In the interim, Defendants moved to dismiss Plaintiff's lawsuit due to his alleged failure to exhaust his administrative remedies. (Doc. 18.) Defendants acknowledge that Plaintiff filed a grievance regarding the claims he raises in this lawsuit. (Doc. 18-1, p. 7.) However, prison officials rejected the grievance because he raised more than one issue in violation of the prison's grievance policy. (Id.) Defendants maintain that Plaintiff failed to appeal that rejection or take any other steps to pursue his claims through the prison's grievance process and, thus, failed to exhaust his available administrative remedies. (Id. at p. 8.) Plaintiff filed a Response to Defendant's Motion on November 1, 2017. (Doc. 24.) Though his response is not clear, it appears Plaintiff disputes whether he received the rejection and argues that he did not have access to the law library. (Id.) Plaintiff filed another Response on November 30, 2017, in which he essentially reasserted the allegations against Defendants made in his Amended Complaint. (Doc. 27.)

# DISCUSSION

## I. Plaintiff Failed to Exhaust his Available Administrative Remedies

### A. Standard of Review for Exhaustion

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." Id. at 1374–75 (internal citation omitted). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id. at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit Court of Appeals set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept

4

all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

### B.     Legal Requirements for Exhaustion

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). Section 1997e(a) of Title 42 of the United States Code states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. Porter, 534 U.S. at 523; see also O'Brien v. United States, 137 F. App'x 295, 301–02 (11th Cir. 2005) (finding lack of exhaustion where prisoner "prematurely filed his civil complaint . . . and . . . 'failed to heed that clear statutory command' requiring that his administrative remedies be exhausted before bringing suit"). Further, the United States Supreme Court held that "the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.' And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." Ross v. Blake, 578 U.S. ___, 136 S. Ct. 1850, 1856 (2016).

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

The Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at1378 ("To exhaust administrative remedies in accordance with the PLRA [(Prison Litigation Reform Act)], prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

6

Furthermore, an inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA. Meadows, 418 F.3d at 1157–59; Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). Additionally, "[t]he only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012).

"However, 'while [Section] 1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process, it does not require more.'" Id. (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000)). The purpose of Section 1997e(a) is not that "fact-intensive litigation" result over whether every fact relevant to the cause of action was included in the grievance. Hooks v. Rich, CV605-65, 2006 WL 565909, at *5 (S.D. Ga. Mar. 7, 2006) (internal citation omitted). "'As long as the basic purposes of exhaustion are fulfilled, there does not appear to be any reason to require a prisoner plaintiff to present fully developed legal and factual claims at the administrative level.'" Id. (quoting Irvin v. Zamora, 161 F. Supp. 2d 1125, 1135 (S.D. Cal. 2001)). Rather, Section 1997e(a) is intended to force inmates to give state prison authorities a chance to correct constitutional violations in their prisons before resorting to federal suit and to prevent patently frivolous lawsuits. Id.

### C. The GDC's Grievance Procedure

The GDC's grievance procedure is set forth in Standard Operating Procedure ("SOP") IIB05-0001. (Doc. 18-3.) This SOP does not require an inmate to attempt an informal resolution of his complaint before filing a formal grievance. (Id. at pp. 5–6.) An inmate can file, with a few exceptions, "a grievance about any condition, policy, procedure, or action or lack thereof

that affects the [inmate] personally." (Id. at p. 6.) Grievances must be limited to a single issue or incident, and an inmate is limited to two simultaneously active grievances. (Id. at pp. 7, 8.) Grievance forms must be available in the control rooms of all living units and must be provided upon request by an offender. (Id. at p. 4.) An inmate must submit a grievance form "no later than 10 calendar days from the date the [inmate] knew, or should have known, of the facts giving rise to the grievance." (Id. at p. 9.) The inmate must use the prison's grievance form when filing the original grievance, and he must sign the grievance form and give it to any Counselor. (Id. at p. 8.) The counselor then gives the inmate the bottom portion of the grievance form as a receipt and forwards the grievance to the grievance coordinator. (Id.)

The grievance coordinator is to screen the grievance to determine whether the warden should accept the grievance or reject it. (Id. at p. 9.) If the warden (or his designee) rejects the grievance, he sends the rejection to the grievance coordinator who then provides the rejection to the counselor. (Id.) The counselor must then give a copy of the rejection go the inmate and have the inmate sign an acknowledgement of receipt. (Id.) The inmate may appeal the warden's rejection to the central office. (Id. at p. 10.)

The warden has a period of forty (40) calendar days from the date the inmate gave his grievance to the counselor to respond. (Id. at p. 11.) An extension of ten (10) calendar days can be granted once, provided the inmate is advised in writing of the extension before the original 40 calendar days have expired. (Id.) An inmate can file an appeal with the Commissioner's Central Office in the following instances: if the grievance coordinator rejects his original grievance; after the warden responds to the original grievance; or when the time allowed for the warden's decision has expired. (Id. at p. 13.) The inmate has seven (7) calendar days in which to file this

appeal. (Id.) The Commissioner has one-hundred (100) calendar days after receipt to render a decision. (Id. at p. 14.)

### D. Assessment of Plaintiff's Exhaustion

In his Amended Complaint, Plaintiff asserts that he filed a grievance on January 5, 2017, but that "he did not get a grievance response or any appeal for the complaint." (Doc. 12, p. 1.) He appears to contend that because he did not get a grievance response and the forty day period for the Warden to respond to his grievance had passed, he exhausted his administrative remedies. (Id.)

Defendants attach the Affidavit of Fred Wilson to their Motion to Dismiss. (Doc. 18-2.) Mr. Wilson is the acting grievance coordinator at Georgia State Prison. (Id. at p. 2.) He testifies that he reviewed Plaintiff's grievance history and found that Plaintiff filed three grievances between December 1, 2016 and April 24, 2017. (Id. at p. 8, 10.) However, only one of those grievances touched on the claims that Plaintiff raised in this lawsuit, Grievance Number 234681, which Plaintiff filed on January 5, 2017. (Id. at p. 8.) Mr. Wilson explains that the acting grievance coordinator at that time recommended that the Warden reject Plaintiff's Grievance Number 234681, because Plaintiff attempted to grieve more than one issue. (Id. at pp. 8–9.) According to Wilson, the Warden's designee responded to the grievance on January 12, 2017, and explained that the Warden rejected the grievance because Plaintiff violated the single-issue rule. (Id. at p. 9.) Wilson avers that Plaintiff acknowledged receipt of the Warden's response by signing the response on January 26, 2017. (Id.) Wilson states that Plaintiff did not file an appeal of this rejection though he could have done so. (Id.) Wilson attaches documents regarding Plaintiff's grievance history and Grievance Number 234681 to his Affidavit. (Doc. 18-3–18-7.)

Even under the analysis applied at the first Turner step, Plaintiff failed to exhaust the GDC's administrative remedies prior to filing this lawsuit.  Plaintiff argues in his Amended Complaint that he never received a response from the Warden after filing his grievance on January 5, 2017.  (Doc. 12, p. 1.)  Plaintiff made the same representation in his original Complaint.  (Doc. 1, p. 3.)  Contrary to Plaintiff's implied argument, however, the warden's failure to respond to his grievance did not excuse Plaintiff from further pursuit of his administrative remedies.  Bettencourt v. Owens, 542 F. App'x 730, 734 (11th Cir. 2013) ("Despite [the plaintiff's] protestations to the contrary, when the warden failed to respond to the formal grievance within the allotted thirty-day period [the plaintiff] was required to pursue an appeal in order to exhaust his claim."); Milton v. Fleckenstein, No. 6:10-CV-377, 2011 WL 208310, at *1 (M.D. Fla. Jan. 21, 2011) ("[A]lthough Plaintiff never received responses to his formal grievances, grievances must be pursued through to the final level, even where no response is received.").  SOP IIB05-0001 specifically provides that an inmate can file an appeal with the Central Office when the time allowed for the warden's decision has expired.  (Doc. 18-3 at p. 13.)  Plaintiff does not dispute that he did not file an appeal or otherwise pursue Grievance Number 234681 after his original filing.  Accordingly, even accepting all of Plaintiff's allegations as true, he failed to exhaust his administrative remedies.  Gipson v. Wilcox, No. CV 313-094, 2015 WL 1757487, at *4 (S.D. Ga. Apr. 17, 2016) ("As Plaintiff did not appeal the denial of his grievance related to the claims against Defendants, Plaintiff failed to satisfy the exhaustion requirement."), *report and recommendation adopted*, 2015 WL 2219684 (May 11, 2015); accord Morgan v. Ivey, No. 5:13-CV-0202, 2013 U.S. Dist. LEXIS 156758, *2–3 (M.D. Ga. Nov. 1, 2013) ("A prisoner must take each required step within the administrative process before filing a complaint in federal court.") (citations omitted).

The weaknesses in exhaustion Plaintiff's arguments are further exposed when subjected to the crucible of examination required by the second Turner step. Mr. Turner attached to his Affidavit a document titled, "Warden's/Superintendent's Grievance Response" regarding Grievance Number 234681. (Doc. 18-5, p. 1.) That Response stated, "RESPONSE TO GRIEVANCE: Per SOP, the complaint must be a single issue. Therefore, this grievance is being rejected due to you filing multiple issues." (Id.) Under the statement, "I ACKNOWLEDGE RECEIPT OF THE ABOVE ON THIS DATE," the Response includes a signature that appears to be Plaintiff's signature dated January 26, 2017. (Id.) The Warden's Grievance Response also advised Plaintiff that he had seven calendar days within which to appeal the Response. (Id.) In his Response to the Motion to Dismiss, Plaintiff appears to argue that he does not recognize his signature or the signature of the Warden's designee.[4] (Doc. 24, p. 1 ("Plaintiff can't recognized his or her sign [sic]").) However, Plaintiff then signed that Response to the Motion to Dismiss, like his other pleadings in this case, with a signature that looks very much like the signature contained below the acknowledgement of the Warden's Grievance Response. (Compare Doc. 18-5, p. 1 with doc. 1, p. 6, doc. 12, p. 9, doc. 24-2, p. 3, and doc. 28, p. 2.) Thus, I specifically find that Plaintiff received the Warden's response on January 26, 2017, and that he failed to file an appeal of that response or take any other action to exhaust the GDC's grievance process as to the claims he raises in this case.

### E.     Whether GDC's Grievance Process Was Available to Plaintiff

Though the Supreme Court rejected a "special circumstances" exception to exhaustion in Ross, it reiterated that a prisoner need only exhaust those remedies which were available to him. 578 U.S. at ___, 136 S. Ct. at 1858 ("An inmate, that is, must exhaust available remedies, but

---

[4] It is not clear if Plaintiff argues that, because the Warden himself did not sign the response to Plaintiff's grievance, Plaintiff did not receive a response. However, SOP IIB05-0001 provides that the Warden's designee can also reject a grievance. (Doc. 18-3, pp. 9, 11.)

11

need not exhaust unavailable ones.") The Court recognized "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Id. First, the Court stated that, in some instances, the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Thus, if the administrative procedure lacks authority or if the officials with apparent authority "decline ever to exercise it," the inmate has no obligation to exhaust the remedy. Id. Second, when administrative remedies are so confusing that they are "essentially 'unknowable,'" exhaustion is not required. Id. at ___, 136 S.Ct. at 1859 (citing Goebert v. Lee County, 510 F.3d 1312, 1323 (11th Cir. 2007), and Turner, 541 F.3d at 1084). Lastly, exhaustion is not required "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. However, the Supreme Court recognized that, "[g]iven prisons' own incentives to maintain functioning remedial processes, we expect that these circumstances will not often arise." Id.

Reading Plaintiff's Response liberally, he argues that the administrative remedies officially on the books at GSP were not made available to him. He states that ("SOP") IIB05-0001 was "located in the law library" and that he "had been asking for law library." (Doc. 24, p. 1.) Plaintiff does not explain how this alleged lack of law library access prevented him from pursuing the GDC's administrative remedies. He does not explain when he asked for law library access or why he needed access to the SOP.[5] Such conclusory and vague allegations cannot

---

[5] It appears that Plaintiff is complaining about access to the law library after he filed this suit. These complaints are of no consequence to whether he exhausted his administrative remedies. "Satisfaction of the exhaustion requirement was a precondition to the filing of his suit, and, thus, must have occurred before the suit was filed." McDaniel v. Crosby, 194 F. App'x 610, 613–14 (11th Cir. 2006) ("To the extent [plaintiff] relies upon the grievances and appeals he submitted after filing his initial complaint, such grievances and appeals cannot be used to support his claim that he exhausted his administrative remedies."). Thus, "[t]he only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." Smith, 491 F. App'x

12

provide grounds to excuse a prisoner from exhausting his administrative remedies.  See Boyd v. Corr. Corp. of America, 380 F.3d 989, 997–98 (6th Cir. 2004) (plaintiff's nonspecific allegations of fear did not excuse his failure to exhaust his administrative remedies).  In sum, under the first Turner step, Plaintiff does not establish that GSP officers were "unable or consistently unwilling to provide any relief to aggrieved inmates," that the GSP grievance process was so complicated that it was "essentially unknowable," or that GSP officers "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  Ross, 578 U.S. at ___, 136 S. Ct. at 1858–59.  Thus, even if the hurdles to exhaustion existed as Plaintiff claims, they did not rise to the height of unavailability that the Supreme Court contemplated in Ross.

Plaintiff's putative claims of unavailability fail even more readily under the second Turner step.  Again, under that step, the Court resolves any disputed factual issues and then assesses, under those findings, whether the prisoner has exhausted his available administrative remedies.  Turner, 541 F.3d 1083.  Having reviewed all of Plaintiff's and Defendants' filings, the Court finds Mr. Wilson's account of the availability of administrative remedies at GSP more credible than Plaintiff's.

Wilson avers that the grievance process is available to all inmates and that all inmates receive an explanation of the process and an outline of the process in the Inmate Handbook during their orientation at GSP.  (Doc. 18-2, pp. 2–3.)  He testifies that grievance forms are available in all living units and in the counselor's offices during business hours and that inmates can access the SOP in the law library.  (Id. at p. 4.)  Additionally, the Warden's Response to Grievance Number 234681, which under the second Turner step the Court finds that Plaintiff received, advised Plaintiff that he must file an appeal of the rejection of his grievance within

---

at 83.  Moreover, Defendant provided Plaintiff with a copy of SOP IIB05-0001 as an Exhibit to their Motion to Dismiss.  (Doc. 18-3.)

seven days. (Doc. 18-5, p. 1.) This documentation supports Mr. Wilson's more credible account and contradicts Plaintiff's implied argument that he could not appeal his grievance because he could not access the SOP.

Moreover, Plaintiff's grievance history belies any contention that prison officials thwarted his attempts to file grievances and appeals or that the grievance process was otherwise unavailable to him. (Doc. 18-4.) Prior to filing Grievance Number 234681 on January 5, 2017, Plaintiff filed seventeen grievances, including nine which he filed while incarcerated at GSP. (Id.) After filing Grievance Number 234681, he filed six grievances, all at GSP. (Id.) He filed Central Office appeals on at least three of the grievances he filed while incarcerated at GSP. (Id.) In less than five months following the Warden's January 26, 2017 rejection of Grievance Number 234681, Plaintiff filed appeals to the GDC's Central Office on two other grievances. (See Doc. 18-6, p. 2 and Doc. 18-7, p. 2.) Consequently, it is clear that Plaintiff was quite familiar with the GDC's grievance process, including the option to appeal a rejection to the Central Office, and that he was able to avail himself of that process.[6] Consequently, I do not find credible Plaintiff's implied argument that he could not have filed an appeal to the Central Office regarding Grievance Number 234681 because the SOP was unknowable to him or because prison officials thwarted his attempts to file an appeal. See Wright v. Langford, 562 F. App'x 769, 776 (11th Cir. 2014) ("[I]t was reasonable for the district court to find that [plaintiff's] purported ignorance of the five-day grievance filing period was not credible, given [plaintiff's] significant prior experiences filing grievances and lawsuits in federal court, as well as the jail official's affidavit stating that each [county] inmate is given a copy of the Inmate Handbook spelling out the grievance procedure."). I specifically find that GDC's grievance

---

[6] Indeed in his Complaint in this case, Plaintiff included an argument, albeit a mistaken one, based on SOP IIB05-0001's requirement that the Warden respond to a grievance within forty days. (Doc. 1, p. 3.)

process has been readily available to Plaintiff and that he was able to file an appeal regarding Grievance Number 234681 but failed to do so.

In sum, Plaintiff filed this lawsuit without availing himself of all of the administrative remedies that the Georgia Department of Corrections made available to him. An inmate must do more to resolve his dispute within the literal walls of the prison or at least the figurative walls of the prison system before seeking relief in the halls of the courthouse. Consequently, the Court should **GRANT** Defendants' Motion and **DISMISS** Plaintiff's Complaint.

## II.     Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[7] Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. See Fed. R. App. R. 24(a)(1)(A) ("A party who was permitted to proceed *in forma pauperis* in the district-court action, . . . may proceed on appeal *in forma pauperis* without further authorization, unless the district court—before or after the notice of appeal is filed—certifies that the appeal is not taken in good faith[.]").

An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).

---

[7] A Certificate of Appealability ("COA") is not required to file an appeal in a Section 1983 action. See Fed. R. App. P. 3 & 4; Morefield v. Smith, No. 607CV010, 2007 WL 1893677, at *1 (S.D. Ga. July 2, 2007) (citing Mathis v. Smith, No. 05-13123-A (11th Cir. Aug. 29, 2005) (unpublished)).

15

Stated another way, an *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Defendants' Motion to Dismiss and Plaintiff's Response, there are no non-frivolous issues to raise on appeal, and any appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the reasons and in the manner set forth above, I **RECOMMEND** that the Court **GRANT** Defendants' Motion to Dismiss, (doc. 18), and **DISMISS** Plaintiff's Complaint **WITHOUT PREJUDICE** due to Plaintiff's failure to exhaust his available administrative remedies. Further, the Court should **DIRECT** the Clerk of Court to close this case and **DENY** Plaintiff *in forma pauperis* status on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in

whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED** and **RECOMMENDED**, this 9th day of August, 2018.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA